**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES SODANO, | Civil Action No. 14-7630 (PGS) |
| Petitioner, | |
| v. | OPINION |
| UNITED STATES OF AMERICAN, | |
| Respondent. | |

**SHERIDAN, District Judge**

This matter comes before the Court on a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Motion") by Petitioner James Sodano, challenging a sentence imposed by this Court in *United States v. Sodano*, No. 12-cr-784, ECF No. 54 (D.N.J. entered Oct. 24, 2013) ("Crim. Dkt."), for armed robbery and related crimes. Respondent has filed an answer, ECF No. 6, and Petitioner filed a reply, ECF No. 9. For the reasons stated below, the Court denies the Motion.

## I.      BACKGROUND

For the purposes of this Opinion, the Court recites a summary of the facts of the case as presented by the parties in their closing statements during the criminal trial. (*See* Crim. Dkt., ECF No. 59.) To the extent the parties offered conflicting facts, the discrepancies are noted.

On the morning of May 19, 2011, money courier Steve Forlenza ("Forlenza") was making a delivery of $400,000 in cash from C & F Check Cashing ("C&F") to El Escorial Bar ("Bar"). When he arrived at the Bar, he was ambushed by Theodore Lada ("Lada"), and a shootout ensued. Apparently surprised by the fact that Forlenza had a gun, Lada fled the scene without obtaining

the money. A moment later, however, Forlenza was shot in the back by an unidentified individual, who took the money. He then shot Forlenza two more times, execution style, while Forlenza laid face down on the ground, before fleeing in a car.

Minutes later, police was alerted to a car crash that occurred four blocks away from the scene of the robbery. When they investigated, they found Petitioner slumped over the steering wheel, wearing camouflaged gear and a bullet-proof vest, bleeding out from a serious gunshot wound in his leg. Police also found several loaded guns, a revolver on his person with spent rounds, and most damningly, a bloodied money bag with $400,000 in cash with receipts indicating it was from C&F.

At Petitioner's trial, Lada testified that he and Petitioner conspired to rob Forlenza that day, and that Petitioner was the mastermind behind the conspiracy. Forlenza, who miraculously survived the ordeal, positively identified Lada as the man with whom he engaged in the initial shootout, but testified that he did not see the second individual's face. He did, however, testify that he fired off one shot, and he believed that it hit the individual behind him in the lower part of the body. Prosecution also produced several eyewitnesses who testified as to what they saw, with some positively identifying Petitioner as the man who fled the scene in a car.

Petitioner, however, presented an entirely different version of the story. He testified that there were three individuals at the robbery that day: Lada, himself, and a third individual named Paul Pace ("Pace"). He further testified that Pace was a loan shark, and he owed Pace a large sum of money. Fearing that he may be killed by Pace over the debt, Petitioner agreed to participate in the robbery under duress. According to Petitioner, that morning, both he and Pace exited the car, and Pace fired the initial shot at Forlenza. He then ordered Petitioner to grab the money bag, and when Petitioner refused, he shot Petitioner in the leg, which caused Petitioner to comply. Pace

then ordered Petitioner to get into the car, and both fled the scene in the car. Although unclear from the transcript, the Court presumes that according to Petitioner's story, Pace was the individual who fired the two additional shots at Forlenza before they fled the scene. Petitioner further testified that before the car crash, Pace ordered Petitioner to let him out, and told Petitioner to "wipe down" the car, before Petitioner allegedly wrestled both the gun and the money away from Pace. Beyond a police report recounting one conflicting eyewitness account—from an unidentified individual whom the police interviewed at the scene—stating that two individuals fled the scene in the car, Petitioner produced no evidence, other than his own testimony, to support his three-person robbery theory. Petitioner was found guilty on all counts by the jury.

## II.  STANDARD OF REVIEW

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (citation omitted).

In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (citation omitted). "It is the

3

policy of the courts to give a liberal construction to pro se habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010). The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United State*, No. 11-4646, 2013 WL 4538293, at *9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545-46).

## III. DISCUSSION

The Motion raises nine claims, all of them asserting ineffective assistance of counsel. Specifically, Petitioner contends that counsel provided ineffective assistance when: (1) counsel failed to object to the use of shackles visible to the jury to restrain Petitioner during trial; (2) counsel erroneously stipulated to "the shootings," ECF No. 1 at 6; (3) counsel failed to note at trial that there was no struggle between Petitioner and Forlenza for the money bag; (4) counsel failed to obtain a gun expert for trial; (5) counsel failed to adequately challenge the inconsistencies and the inaccuracies of eyewitness testimonies; (6) counsel failed to call as witness the doctor who operated on Petitioner's gunshot wound to the knee; (7) counsel failed to adequately challenge Forlenza's testimony;[1] (8) counsel failed to file a reply brief on direct appeal; and (9) counsel failed to object to Lada's testimony on the ground that "common law" bars the testimony of an infamous person. The Court rejects these claims.

### A. Ineffective Assistance of Counsel Standard

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's

---

[1] The Court construes Grounds Seven and Nine of the Motion as raising the same claim.

4

assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 134 S. Ct. 1081, 1083 (2014) (citation omitted). To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.² To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the [case] would have been different absent the deficient act or omission." *Hinton*, 134 S. Ct. at 1083.

### B. Shackles

Petitioner asserts that counsel was ineffective for not objecting to the use of shackles during trial. The Court rejects this claim. Counsel was not ineffective for not objecting because there was nothing to object—although shackles were used during trial, they were not visible to the jury and therefore did not violate the Constitution.

The Supreme Court has held that the use of shackles visible to the jury during a criminal trial, without justification found by the Court, violates a defendant's due process rights. *See Deck v. Missouri*, 544 U.S. 622, 629 (2005) ("The law has long forbidden routine use of *visible* shackles during the guilt phase[.]") (emphasis added). In that regard, the Third Circuit has held that the use

---

² The reasonable probability standard is less demanding than the preponderance of the evidence standard. *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).

of shackles does not violate the Constitution, even absent just cause, if care was taken to ensure that the shackles were never visible to the jury. *See United States v. Tagliamonte*, 340 F. App'x 73, 80 n.6 (3d Cir. 2009) (rejecting a defendant's contention that the "use of [shackling] is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold[,]" finding there was no constitutional violation when shackling was not visible to the jury).

Here, Respondent asserts that while Petitioner was shackled during his trial, at no time did the jury have an opportunity to observe Petitioner in shackles, because the defense table where Petitioner sat was covered by drapes and therefore obscured the shackles, and Petitioner was always transferred to and from that table outside the presence of the jury. Petitioner, in his reply, does not dispute this assertion, but instead argues, without citing any authority, that "[a]lthough Courts can take measures to obscure shackles—and should do so even in the rare circumstances that justify shackling—obscured shackles are no less an indignity than visible ones. Moreover, relief may still be appropriate even despite efforts to hide restraints from the Jury." ECF No. 9 at 6. This, of course, is the same argument that was rejected by *Tagliamonte*.

Trial transcripts fully support Respondent's assertion. During one sidebar, the Court and the parties discussed the possibility of Petitioner testifying at trial, and the need for him to display his leg injury to the jury, which would then reveal his shackles. It was clear that both the prosecution and the defense counsel were fully cognizant of the constitutional ramifications of shackling and its visual effects to the jury, and went to great lengths to discuss various ways to accommodate the defense while avoid displaying the shackles to the jury. *See* Crim. Dkt., ECF No. 39 at 589:14-592:20. Ultimately, defense counsel elected to use photographs of the injury, and avoided the shackling problem altogether. *Id.* at 775:21-776:10. This entire discussion would

be wholly unnecessary if the shackles were already on full display to the jury during trial. Defense counsel did not object to the use of shackles itself because he understood the law, that only *visible* shackles pose constitutional issues. As such, the Court finds that counsel was not ineffective on this ground, and relief is denied.

### C. Other Claims

The rest of Petitioner's claims essentially challenges counsel's alleged deficiencies in presenting the three-person robbery theory. Putting aside the fact that the record supports the conclusion that counsel rigorously argued and presented the theory, even assuming all of the alleged deficiencies were true, Petitioner was not prejudiced because overwhelming evidence supported his guilt. *See Saranchak v. Beard*, 616 F.3d 292, 311 (3d Cir. 2010) (holding that overwhelming evidence against petitioner precludes a finding of prejudice in an ineffective assistance of counsel claim).

As the Third Circuit highlighted on direct appeal, the most damning evidence in this case was "quite tellingly, a blood-stained bag of money" that was found in the getaway vehicle with Petitioner. *United States v. Sodano*, 592 F. App'x 114, 115 (3d Cir. 2014). Indeed, three pieces of the most damning evidence sunk Petitioner's theory: (1) Lada's testimony that this was a two-person robbery; (2) Forlenza's testimony that he was involved in a shootout with Lada who escaped, and he shot the man behind him who he did not see; and (3) Petitioner was discovered in possession of the money with a gunshot wound in his leg four blocks away from the scene. Even without any other evidence, the only conclusion the jury could have drawn was that it was Petitioner who shot Forlenza, took the money, and escaped in the car, because there was no one else involved.

As stated above, Petitioner presented no affirmative evidence to substantiate his theory other than his own testimony, and a police report regarding some unnamed witness who stated that he may have seen two people escape in the car. While it is true that the prosecution never truly disproved the theory, that was not the prosecution's burden—the prosecution only had to prove, beyond a reasonable doubt, that Petitioner committed the crime. The Court admits that the three-person robbery theory was a clever attempt at creating reasonable doubt, but nevertheless, the jury must have found it not believable because it convicted Petitioner. Now on habeas, Petitioner's ineffective assistance of counsel claims are attempting to highlight that same reasonable doubt, but that is no longer the standard. It is now *Petitioner's* burden to show that he is entitled to relief, and on an ineffective assistance of counsel claim, it is his burden to show not only deficient performance by counsel, but also prejudice arising from such deficient performance; that is, the outcome of the trial would have been different.

However, none of the alleged ineffective assistance attacked the validity of the most damning evidence recited above, with the exception of Petitioner's contention that "common law" prohibited Lada's testimony because he was "infamous." Such doctrine, of course, does not exist, nor does Petitioner cite to any authority attesting to its existence. Petitioner simply presents no additional evidence to substantiate his three-person robbery theory, which the jury already rejected based in the available evidence.[3] Indeed, Petitioner would have the jury at trial, and now the Court

---

[3] For example, Petitioner alleges that counsel could have obtained a gun expert or solicited the testimony of his surgeon, but he provides no evidence to show that the expert or the surgeon would have actually provided any testimony favorable to him. *See Perez v. United States*, No. 14-6682, 2017 WL 2304230, at *3 (D.N.J. May 25, 2017) (finding a petitioner's claim that counsel could have obtained expert testimony was insufficient to state an ineffective assistance of counsel claim, when the petitioner presented no evidence, such as an actual expert report, to show that the expert would have substantiated his claim of actual innocence).

on habeas, believe that Pace would ask a man who was bleeding profusely from a gunshot wound to "wipe down" the car—the absurdity of that story is self-evident.

To conclude, even if the Court accepts Petitioner's contention that counsel could have done more, Petitioner has not shown there is a reasonable probability that the outcome of the trial would have been different. All of the evidence he relies on were already presented to the jury, and the jury rejected his theory of the case, so there is no occasion for the Court to question the jury's verdict. As such, the Court finds Petitioner has failed to show that he suffered any prejudice from the alleged ineffective assistance of counsel, and relief on these grounds is denied.

## IV.  CERTIFICATE OF APPEALABILITY

Lastly, the Court denies a certificate of appealability ("COA"). Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A Petitioner satisfies this standard by demonstrating that jurist of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus no certificate of appealability shall issue. *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## V. CONCLUSION

For the reasons set forth above, Petitioner's Motion is DENIED and the Court denies a certificate of appealability.

Date: 10/16/17

_____ 10/16/17
**Peter G. Sheridan**
**United States District Judge**