## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JAMES SODANO, | : | |
| | : | |
| Petitioner, | : | Civ. No. 14-7630 (PGS) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | **OPINION** |
| | : | |
| Respondent. | : | |

**PETER G. SHERIDAN, U.S.D.J.**

### I.   INTRODUCTION

Petitioner, James Sodano ("Petitioner" or "Sodano"), is a federal prisoner proceeding *pro se* with amended claims to his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, Petitioner's amended claims to his § 2255 motion are denied and a certificate of appealability shall not issue.

### II.   FACTUAL AND PROCEDURAL BACKGROUND

This Court laid out the factual background giving rise to Petitioner's judgment and conviction in a prior opinion as follows:

> On the morning of May 19, 2011, money courier Steve Forlenza ("Forlenza") was making a delivery of $400, 000 in cash from C & F Check Cashing ("C&F") to El Escorial Bar ("Bar"). When he arrived at the Bar, he was ambushed by Theodore Lada ("Lada"), and a shootout ensued. Apparently surprised by the fact that Forlenza had a gun, Lada fled the scene without obtaining the money. A moment later, however, Forlenza was shot in the back by an unidentified individual, who took the money. He then shot Forlenza two more times, execution style, while Forlenza laid face down on the ground, before fleeing in a car.
>
> Minutes later, police w[ere] alerted to a car crash that occurred four blocks away from the scene of the robbery. When they investigated, they found Petitioner slumped over the steering

wheel, wearing camouflaged gear and a bullet-proof vest, bleeding out from a serious gunshot wound in his leg. Police also found several loaded guns, a revolver on his person with spent rounds, and most damningly, a bloodied money bag with $400,000 in cash with receipts indicating it was from C&F.

At Petitioner's trial, Lada testified that he and Petitioner conspired to rob Forlenza that day, and that Petitioner was the mastermind behind the conspiracy. Forlenza, who miraculously survived the ordeal, positively identified Lada as the man with whom he engaged in the initial shootout, but testified that he did not see the second individual's face. He did, however, testify that he fired off one shot, and he believed that it hit the individual behind him in the lower part of the body. Prosecution also produced several eyewitnesses who testified as to what they saw, with some positively identifying Petitioner as the man who fled the scene in a car.

Petitioner, however, presented an entirely different version of the story. He testified that there were three individuals at the robbery that day: Lada, himself, and a third individual named Paul Pace ("Pace"). He further testified that Pace was a loan shark, and he owed Pace a large sum of money. Fearing that he may be killed by Pace over the debt, Petitioner agreed to participate in the robbery under duress. According to Petitioner, that morning, both he and Pace exited the car, and Pace fired the initial shot at Forlenza. He then ordered Petitioner to grab the money bag, and when Petitioner refused, he shot Petitioner in the leg, which caused Petitioner to comply. Pace then ordered Petitioner to get into the car, and both fled the scene in the car. Although unclear from the transcript, the Court presumes that according to Petitioner's story, Pace was the individual who fired the two additional shots at Forlenza before they fled the scene. Petitioner further testified that before the car crash, Pace ordered Petitioner to let him out, and told Petitioner to "wipe down" the car, before Petitioner allegedly wrestled both the gun and the money away from Pace. Beyond a police report recounting one conflicting eyewitness account—from an unidentified individual whom the police interviewed at the scene—stating that two individuals fled the scene in the car, Petitioner produced no evidence, other than his own testimony, to support his three-person robbery theory.

*Sodano v. United States*, No. 14-7630, 2017 WL 4618754, at *1 (D.N.J. Oct. 16, 2017), *vacated and remanded on other grounds*, 763 F. App'x 236 (3d Cir. 2019).

Petitioner was found guilty by a jury of conspiracy to commit robbery, robbery and possession and use of a weapon in a robbery. (*See* Crim. No. 12-784 ECF 54). Petitioner was sentenced to 168 months each on the conspiracy to commit robbery and robbery convictions to be served consecutively. He was sentenced to 300 months imprisonment on the possession and use of a weapon during a robbery to be served consecutively to his 168-month sentence for a total sentence of 468 months imprisonment. (*See id.*).

Petitioner's judgment and conviction was affirmed on direct appeal. *See United States v. Sodano*, 592 F. App'x 114 (3d Cir. 2014). The United States Supreme Court denied Petitioner's petition for writ of certiorari in March, 2015. *See Sodano v. United States*, 575 U.S. 922 (2015).

Petitioner raised nine claims in his original § 2255 motion in December 2014. (*See* ECF 1). As explained by this Court, those claims were as follows:

> (1) counsel failed to object to the use of shackles visible to the jury to restrain Petitioner during trial; (2) counsel erroneously stipulated to "the shootings," ECF No. 1 at 6; (3) counsel failed to note at trial that there was no struggle between Petitioner and Forlenza for the money bag; (4) counsel failed to obtain a gun expert for trial; (5) counsel failed to adequately challenge the inconsistencies and the inaccuracies of eyewitness testimonies; (6) counsel failed to call as witness the doctor who operated on Petitioner's gunshot wound to the knee; (7) counsel failed to adequately challenge Forlenza's testimony; (8) counsel failed to file a reply brief on direct appeal; and (9) counsel failed to object to Lada's testimony on the ground that "common law" bars the testimony of an infamous person.

*Sodano*, 2017 WL 4618754, at *2 (footnote omitted). Respondent filed its response in opposition in April, 2015. (*See* ECF 6). Petitioner filed a memorandum of law in support of his § 2255 motion in September, 2015. (*See* ECF 9). In that memorandum, Petitioner inartfully asserted a claim pursuant to *Lafler v. Cooper*, 566 U.S. 156 (2012).

On October 24, 2016, this Court received Petitioner's formal motion to amend his § 2255 motion to add his *Lafler* claim to these proceedings. (*See* ECF 13). On February 16, 2017, this

Court denied the motion to amend concluding that the *Lafler* claim was untimely. (*See* ECF 15). On March 21, 2017, Respondent indicated that Petitioner raised a *Lafler* claim in his September, 2015 filing. (*See* ECF 18). Thus, according to Respondent, Petitioner's *Lafler* claim was timely. (*See id.*). On March 22, 2017, this Court held that Petitioner could not amend his petition by raising a new claim in his reply brief. (*See* ECF 19).

Subsequently, in October, 2017, this Court denied all nine claims raised by Petitioner in his original § 2255 motion and denied a certificate of appealability. (*See* ECF 23 & 24). Petitioner appealed and the Third Circuit granted a certificate of appealability only on whether this Court should have reached Petitioner's *Lafler* claim on the merits. On April 17, 2019, the Third Circuit remanded this case so that this Court could consider Petitioner's *Lafler* claim on the merits. *See Sodano*, 763 F. App'x at 237.

On May 20, 2019, Respondent submitted a letter in opposition to Petitioner's *Lafler* claim, arguing that the claim should be denied without an evidentiary hearing. (*See* ECF 31). Thereafter, Petitioner filed a motion for the appointment of counsel and for an extension of time in which to file a reply to the government's May 20, 2019 response to his *Lafler* claim. (*See* ECF 33 & 34). On July 29, 2019, this Court denied Petitioner's motion for the appointment of counsel without prejudice, but granted his request for an extension of time to submit further argument. (*See* ECF 26 & 37).

On August 29, 2019, Petitioner submitted further argument in support of his *Lafler* claim. (*See* ECF 38). Additionally, Petitioner asserted that counsel was ineffective for failing to investigate and request a competency hearing during the plea process. (*See id.*). On September 17, 2019, Respondent filed a reply to Petitioner's August 29, 2019 filing. (*See* ECF 39).

Respondent argues that Petitioner's claim regarding a failure to investigate or request a competency hearing is untimely. (*See id.*). This matter is now ready for adjudication.[1]

### III.  LEGAL STANDARD

A motion to vacate, set aside or correct a sentence of a person in federal custody pursuant to 28 U.S.C. § 2255 entitles a prisoner to relief if "the court finds . . . [t]here has been such a denial or infringement of the constitutional rights of the prisoner as to render judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)) (citing R. Governing § 2255 Cases R. 4(b)). A District Court "is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Id.* (quoting *Forte*, 865 F.2d at 62). The Third Circuit has stated that this standard creates a "'reasonably low threshold for habeas petitioners to meet.'" *Id.* (quoting *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (quoting *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001))). Accordingly, this Court abuses its discretion "if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief." *Id.* (citing *McCoy*, 410 F.3d at 134).

---

[1] Petitioner also filed a request for compassionate release under the First Step Act in this § 2255 action. (*See* ECF 40). That request was also filed as a motion to reduce Petitioner's sentence in his criminal action. (*See* Crim. No. 12-784 ECF 69). Such a request is properly before the sentencing court. *See United States v. Raia*, 954 F.3d 594, 596 (3d Cir. 2020). Thus, this opinion takes no stance on that pending motion in the criminal action where it is properly filed.

### IV.   DISCUSSION

A.   *Lafler* Claim

Petitioner's *Lafler* claim centers upon counsel's purported advice, or lack thereof, that he gave to Petitioner during the plea negotiation process. More specifically, Petitioner argues that counsel failed to explain the following to him during while a proposed plea agreement offer was still pending:

1. How the Pre-Sentence Report ("PSR") would compute the sentencing guideline range

2. The requirement that the judge consider § 3553(a) factors and the mandatory minimum sentence of ten years for a § 924(c) charge

3. Petitioner's sentence if he was found guilty

4. The sentencing alternatives that would apply

5. The benefits of pleading guilty as provided by the guidelines including a three-level offense level reduction

6. The possibility that Petitioner's acknowledgement of guilt might motivate the judge to impose a mandatory minimum term of imprisonment rathe rather than any higher sentence, especially when there was a lengthy mandatory minimum.

(*See* ECF 38 at 9). According to Petitioner, his attorney negligently failed to recommend that he accept the government's thirteen-year plea offer. (*See id.*). Had counsel adequately explained all the benefits of pleading guilty as outlined above, Petitioner asserts that he would have taken the plea offer rather than gone to trial. (*See id.* at 9-10).

The Sixth Amendment guarantees effective assistance of counsel. In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective. First, the petitioner must show that

considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the

outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice... that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

Defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. *See Lafler v. Cooper*, 566 U.S. 156, 162, 132 S. Ct. 1376, 1384 (2012). "When addressing a guilty plea, counsel is required to give a defendant enough information "'to make a reasonably informed decision whether to accept a plea offer.'"" *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (quoting *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992))). Potential sentencing exposure is an important factor in a defendant's decision-making process. *See id.* Indeed, as noted by the Third Circuit, "[k]nowledge of the comparative exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Day*, 969 F.2d at 43. "In order to provide this necessary advice, counsel is required 'to know the Guidelines and the relevant Circuit precedent....'" *Bui*, 795 F.3d at 367 (quoting *United States v. Smack*, 347 F.3d 533, 538 (3d Cir. 2003)). "A defendant who rejects a guilty plea and receives a more severe sentence after trial makes a claim of ineffective assistance when 'he alleges that the advice he received was so

incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer.'" *Morris v. Adm'r New Jersey State Prison*, 770 F. App'x 601, 605 (3d Cir. 2019) (quoting *Day*, 969 F.2d at 43). In the context of rejecting a plea, petitioner must show that "'but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea' and the resulting sentence would have been lower." *Shotts*, 724 F.3d at 376 (citing *Lafler*, 132 S. Ct. at 1391). However, the Third Circuit has also cautioned that courts should be "wary" of claims that trial counsel did not adequately advise a defendant about the benefits and consequences of a plea offer because "defendants will always want the best of both worlds: the chance at acquittal at trial, yet the chance to plead guilty if the trial defense fails." *Day*, 969 F.2d at 46 n.9.

The proposed plea agreement offer at issue was set to expire on January 18, 2012. Prior to that date, however, then Magistrate Judge Schwartz conducted a status conference. Petitioner was present at this hearing and the proposed plea agreement was discussed at length. In open court, the Assistant United States Attorney ("AUSA") explained that the proposed plea agreement offered called upon Petitioner to plead to one count of robbery only. (*See* ECF 31-2 at 5). The AUSA then noted that if the plea agreement was not agreed to by January 18, 2012, it was likely that additional charges would be brought beyond the one in the proposed plea agreement. (*See id.* at 6). The prosecutor then specifically noted that these additional charges could result in what amounted to a life sentence against Petitioner. (*See id.* at 6-7). More specifically, the prosecutor stated as follows:

> So there is a great likelihood that the charges sought on February 2d will include a 924(c) or multiple 924(c)s.
>
> And what that means -- of course the Court knows, but for the defendant's sake and for the record, the defendant used those guns in furtherance of the Hobbs Act robbery. And those -- that imposes

9

> additional sentences on him which potentially could lead to what amounts to a life sentence. Because he discharged the weapon, the potential sentences, whatever he would get on the Hobbs Act -- and I don't want to go through the guideline calculations, but, you know, approximately at least 7, 8, or 9 years, or perhaps more, consecutive to 10 years, because he discharged the weapon during the robbery.
>
> But on top of that, if there were additional 924(c)s -- and there is a likelihood the government will charge those -- each one of those would require a 25-year consecutive sentence; therefore, a tremendous amount of time potentially.
>
> And before the defendant, you know, rejects the plea, we wanted to make sure, since it is a potential life sentence in this case, based on the defendant's age, that he is aware of the consequences, aware of the additional charges that likely will be brought on February 2d, that he's aware of the deadlines in place, and that he's made an informed and intelligent decision.

(ECF 31-2 at 6-7). After this explanation by the AUSA, Petitioner's counsel, Mr. Mizzone, Esq., told Judge Schwartz that he had also explained this to Petitioner. (*See id.* at 8). Judge Schwartz then asked whether Petitioner had heard all the things that the prosecutor had outlined on the record, and specifically noted that if the case was not resolved, the grand jury could consider other charges. (*See id.* at 9). Petitioner responded affirmatively. (*See id.*) Judge Schwartz then engaged directly with Petitioner as follows:

> What the -- I think what the prosecutor is trying to do by doing that was simply to ensure that you understood the difference in terms of the plea that they're proposing in terms of the amount of time you may face, if you plead guilty, which is completely up to you, or what you may be exposed to if the grand jury convenes and returns an indictment that has these firearms charges included, because the way that the law works is they have to run consecutive to any sentence on the robbery.
>
> And, sir, I -- this is a decision that's completely your own. But all I think the prosecutor's looking to you and your lawyer to be sure that you understand that if you are convicted of those sorts of offenses, the consequences are very -- could be a very significant

10

> sentence, which is greater than what the prosecutor's -- is
> proposing to your lawyer as a possible resolution.
>
> Do you understand all that?

(ECF 31-2 at 9-10). Petitioner responded, "I think so." (*See id.* at 10). Thereafter, Judge Schwartz gave Petitioner the opportunity to ask any questions. (*See id.*). Petitioner then inquired about his right to a preliminary hearing. (*See id.*). Thereafter, there was a discussion between Petitioner, Judge Schwartz and counsel about the waiver of the preliminary hearing in this case. (*See id.* 10-19).

Next, Petitioner asked Judge Schwartz whether a mailed motion would "get to her?" (*See id.* at 19). Judge Schwartz stated that she had received his motions, but that there was no right to hybrid representation. (*See id.*) Thereafter, Mr. Mizzone spoke and stated that he had explained the pros and cons of the plea offer to Petitioner. (*See id.* at 21). Mr. Mizzone then stated that he told Petitioner that he would be back to talk with him before the plea agreement expired. (*See id.*). Toward the end of the January 12, 2012 status conference, Judge Schwartz and the Petitioner engaged in the following colloquy:

> [THE COURT:] But I think what the government is trying to just
> advise you of is that you have a right to accept it, you have a right
> to reject it, and to give you just the notice that additional charges
> may be sought from the grand jury if you choose to reject this plea
> agreement, and that's totally up to you.
>
> I think the other thing that's being conveyed here is that if for any
> reason, you would like more time with your attorney to think about
> whether to accept this offer or not, that they're -- the government is
> completely fine with giving you that time. They're not looking to
> rush you into a decision. And so if your attorney, you know,
> believes that's in your interest -- and I imagine he would then that's
> another thing that's sort of out there for your consideration.
>
> You shouldn't make a decision on the fly, like to me directly.
> That's sort of -- you've got to have a conversation with your
> lawyer. It's very unusual for a judge to do what I'm doing with you

11

> today, having this direct discussion, because I don't want you to
> inadvertently say something here in the courtroom in the presence
> of the other side that's really privileged, that you have a right to
> keep confidential with your lawyer.
>
> But I thought that given the nature of the kind of inquiries you
> have, that it made some sense for you to have a chance to ask those
> questions and all of us discuss them together.
>
> So I'm not here to make any rulings on anything, any of this that
> we've been discussing. This is simply a conversation that we're all
> having to make sure everyone understands the state of affairs.
> Do you understand what all I'm talking about?
>
> THE DEFENDANT: Yes.

(ECF 31-2 at 27-28). Thereafter, Judge Schwartz asked Mr. Mizzone whether there was anything Mr. Mizzone and Petitioner wanted to discuss with her. (*See id.*) Mr. Mizzone then stated the following:

> So, you know, it's one thing to say, well, I've just gotten this, and I
> have to understand -- it's a very serious offense. We're talking
> about him potentially getting out in less 10 years as opposed to
> doing life. Literally. And it's serious and significant.
>
> . . . .
>
> But, you know, the suggestion that, you know, I want -- I don't
> want any further continuances, I want the case to go to the grand
> jury, I'll state on the record, in my experience, 20 years' practicing
> down here, I don't see that to being any advantage whatsoever to
> the defendant in this case.

(*Id.* at 29, 30). Judge Schwartz then gave Mr. Mizzone time to speak to Petitioner about the plea agreement offer. (*See id.* at 30). After a short break in the status conference to permit Mr. Mizzone to speak to Petitioner, Mr. Mizzone stated that he would have to convene with Petitioner at a different time. (*See id.* at 31).

      This status conference indicates that Petitioner was well-aware of his sentencing exposure if he did not accept the proposed plea agreement offer. First, the AUSA in open court

12

with Petitioner present explained that by rejecting the plea agreement offer, Petitioner could possibly be facing a life sentence. This included the likelihood that the grand jury would convene and a weapons charge be brought. If convicted, Petitioner would then face an additional consecutive twenty-five-year sentence. Petitioner affirmed that he had heard what the prosecutor had said.

Next, Mr. Mizzone stated in open court that he had discussed with Petitioner the pros and cons of the plea agreement. Petitioner did not state at the status conference that this was false. Judge Schwartz then reiterated that Petitioner was potentially looking at a very significant sentence if he did not accept the proposed plea agreement and was convicted at trial. Finally, Mr. Mizzone noted that Petitioner was possibly facing a life sentence if he did not take the proposed plea agreement. Mr. Mizzone then stated that Petitioner could possibly get out in ten years if he agreed to the proposed plea.

Petitioner fails to show that he is entitled to an evidentiary hearing on this *Lafler* claim. The status conference transcript before Judge Schwartz indicates that Petitioner was aware of the plea agreement offer and sentencing exposure if he rejected the proposed plea agreement offer. *See, e.g.*, *Kantete v. United States*, No. 16-4801, 2019 WL 1500616, at 6 (D.N.J. Apr. 5, 2019) (denying *Lafler* claim where record indicated that petitioner was aware of plea offer sentence and sentencing exposure if convicted at trial and where counsel discussed potential penalties and consequences of proceeding to trial rather than accepting the plea offer). Thus, Petitioner was given enough information to make a reasonably informed decision on whether to accept the plea agreement offer. His ability to make an informed decision on whether to accept the plea

agreement offer was not so undermined given what was expressly told him in open court before Judge Schwartz. Accordingly, this claim is denied.[2]

B. <u>Mental Competence</u>

Next, Petitioner asserts that Mr. Mizzone should have requested that this Court conduct a psychological evaluation on Petitioner to determine whether he was competent to enter a guilty plea and/or whether he was able to assist his attorney and rationally consult about the proposed plea agreement. (*See* ECF 38 at 14). Petitioner asserts that he was not of a clear mind at the January 12, 2012 status conference hearing before Judge Schwartz.

Respondent asserts that this claim was first raised in Petitioner's August, 2019 brief is a new claim that is time-barred. This Court agrees for the following reasons.

Section § 2255(f) includes a one-year period in which a petitioner may file a request for relief, which runs form the latest of four specified events:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence[.]

---

[2] It is also worth noting that in January, 2012, Petitioner himself indicated that counsel was recommending that he take a plea. Indeed, Petitioner, in a *pro se* motion to dismiss the criminal action against him dated January 23, 2012, referred to a meeting he had with Mr. Mizzone on December 14, 2011. (*See* ECF 31-3). At that meeting, Petitioner states that Mr. Mizzone told him he thought Petitioner would lose at trial and that he should consider taking a deal. (*See id.*). This admission by Petitioner as to what counsel told him lends further support in denying the *Lafler* claim.

14

28 U.S.C. § 2255(f). Because Petitioner does not contend that new facts have been recently discovered which would support his petition, nor has he pointed to a new right recognized by the Supreme Court and made retroactively applicable nor that the government impeded Petitioner, this Court will only examine § 2255(f)(1) as to whether his claim that counsel should have requested a competency evaluation is time-barred.

Petitioner's judgment became final under § 2255(f) on March 23, 2015 when the United States Supreme Court denied certiorari on Petitioner's direct appeal. *See Sodano v. United States*, 575 U.S. 922 (2015). Thus, he had one year from that date in which to file his § 2255 motion. Petitioner did not bring his claim that counsel was ineffective for failing to request a competency hearing until August, 2019. Thus, at first glance, this claim is clearly untimely. However, this Court must next determine whether the claim "relates back" to any of Petitioner's claims in his timely filings.

> Pursuant to Rule 15(c), an amendment that is otherwise untimely "relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court has cautioned that courts should not interpret "conduct, transaction, or occurrence" in such a broad manner so as to construe essentially all amendments as permissible under the relation-back doctrine. *See Mayle v. Felix*, 545 U.S. 644, 656–57, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005). For example, in the habeas context, the Supreme Court has refused to interpret "conduct, transaction, or occurrence" as broadly encompassing a "habeas petitioner's trial, conviction, or sentence," reasoning that "[u]nder that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." *Id.* Instead, it has counseled that an amendment relates back to a habeas petition under Rule 15(c) "[s]o long as the original and amended petitions state claims that are tied to a *common core of operative facts*." *Id.* at 664, 125 S. Ct. 2562 (emphasis added).

15

> In "search[ing] for a common core of operative facts in the two pleadings," *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004), courts should remain aware that "the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide,'" *Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012). "Thus, only where the opposing party is given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds' will relation back be allowed." *Glover*, 698 F.3d at 146 (quoting *Bensel*, 387 F.3d at 310). For example, we have held that "amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction[,] or occurrence in the preceding pleading fall within Rule 15(c)" because the opposing party will have had sufficient notice of the circumstances surrounding the allegations contained in the amendment. *Bensel*, 387 F.3d at 310.

*United States v. Santarelli*, 929 F.3d 95, 101 (3d Cir. 2019).

Petitioner's December, 2014 original § 2255 motion and his September, 2015 memorandum of law in support were both filed within the applicable one-year statute of limitations. However, unlike Petitioner's *Lafler* claim which was raised (albeit inartfully) in Petitioner's September, 2015 filing, neither the December 2014 nor the September 2015 filing remotely raised a claim related to Mr. Mizzone's purported ineffectiveness for failing to request a competency hearing/evaluation. This claim is not tied to any common core of operative facts that Petitioner raised in either of those two timely filings. Accordingly, because the claim does not relate back, it is untimely. Therefore, it will be denied as time-barred.

## V. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a

16

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In *Slack v. McDaniel,* 529 U.S. 473, 484 (2000), the United States Supreme Court held: "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Petitioner has not met the standard for a COA on either of his claims discussed in this opinion. Thus, a COA will not issue.

## VI.     CONCLUSION

For the foregoing reasons, Petitioner's *Lafler* claim is denied on the merits without the need for an evidentiary hearing and his ineffective assistance of counsel for failing to request/investigate a competency evaluation is time-barred. A certificate of appealability shall not issue. An appropriate order will be entered.


DATED: June 17, 2020

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.